E-FILED on 3/19/13

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re:<br>ATINA BERTOS<br>　　　　　　　Plaintiff,<br>　　v.<br>JANET NAPOLITANO, et al.,<br>　　　　　　　Defendants. | No. C-12-3531-RMW<br><br>**ORDER RE: SUFFICIENCY OF EVIDENCE** |

Plaintiff Atina Bertos ("Bertos") petitioned the court for review of her application for naturalization pursuant to 8 U.S.C. § 1421(c). Bertos entered the United States in 1994 as a temporary visitor, but remained in the United States pursuant to the grant of her father's 1995 I-589 Application for Asylum and Withholding of Deportation ("Asylum Application"), which included her as a derivative beneficiary of her father. Pet. ¶ 12; Asylum Application (Pet. Ex. H, Dkt. No. 1-2 at 52-54). The United States Citizen and Immigration Services ("CIS") granted Bertos's father asylum on the basis that he had established a "well-founded fear of persecution upon returning to [his] home county of Iran." Pet. ¶ 12. In 1997, Bertos filed an Application for Adjustment of Status to lawful permanent resident ("LPR"). *Id.* On November 1, 1998, the CIS granted her LPR status under section 209(b)(3) of the Immigration and Naturalization Act, codified at 8 U.S.C.

ORDER RE: SUFFICIENCY OF EVIDENCE—No. C-12-3531-RMW
ALG

§ 1159(b)(3), based on her "derivative asylum status as the . . . child of a person granted asylum." Bertos's Form I-485 Application to Register Permanent Residence or Adjust Status (Pet., Ex. E, Dkt. No. 1-2) ("Form I-485"). Almost ten years later, in February 2007, Bertos applied to naturalize. In October 2007, the CIS held a naturalization interview, and recommended Bertos for approval. Over three hears later, in November 2010, the CIS reopened Bertos's cases *sua sponte*, and in a decision dated December 17, 2012, denied her application for naturalization ("Naturalization Decision").

The CIS based its denial of Bertos's naturalization application on a 2006 naturalization interview of her father, in which it allegedly discovered that he possessed Greek citizenship—a fact which the agency claims it was not aware of when it granted his Asylum Application. The CIS wrote:

> When your father applied for asylum on September 18, 2005 [sic],[1] he stated on his I-589 application for asylum, that his current nationality was "Stateless." However, during the March 27, 1996 asylum interview, it was confirm [sic] that he was an Iranian national as he was born in Tehran, Iran and held an Iranian passport. But in a follow up Naturalization interview held on October 26, 2009, it was established that your father was also a citizen of Greece as he was in possession of a tautotita or taftotita, a document that confirms Greek citizenship.

Attachment to Naturalization Decision, Alien File No. A7341185 ("Form N-335"), Dkt. No. 1-2 at 3.

If Bertos's father was a citizen of both Iran and Greece at the time of his application for asylum, Bertos's father would have been required to prove a well-founded fear of returning to both Iran and Greece to obtain asylum in the United States.[2] Apparently, however, the agency never made any determination of Asylum with respect to Greece:

> The record shows that your father applied for asylum as an Iranian national and only established a well-founded fear of persecution had he returned to Iran. . . . As a result, the Asylum officer could not adjudicate whether your father held a well-founded fear of persecution had he returned to Greece. As a result, the Asylum officer could not adjudicate whether [he] held a well-founded fear of persecution had

---

[1] Bertos's father I-589 application for asylum is dated September 14, 1995. The CIS's references to September 18, 2005 as the date of Bertos's father's I-589 Asylum Application appear to be in error.

[2] *See* 8 U.S.C. § 1158(a)(2)(A) (An alien otherwise eligible for asylum by being physically present in the United States is not eligible if "the Attorney General determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened.").

he returned to Greece.  Consequently, your father did not lawfully obtain permanent residence status in the United States.

Attachment to Naturalization Decision, Alien File No. A7341185, Dkt. No. 1-2 at 4 ("Form N-335").

At the hearing, however, Bertos maintained that there is an issue of fact as to whether Bertos's father was, in fact, a citizen of Greece at the time of his application for asylum.  Indeed, the record implies that he may not have been a citizen of Greece at the time he applied for asylum.  In his Asylum Application, Bertos's father wrote:

> I was in Greece for three year legally and thereafter declared illegal due to the fact that my application to be classified as a refugee was denied by the United States.  I can not return to Iran because I will be executed *and cannot return to Greece because they will not permit me to stay legally*.  I have no where to go and need to protect an [sic] support my family.

Asylum Application, Dkt. No. 1-2 at 56.  Moreover, there is nothing in the record currently before the court definitively establishing whether Bertos's father actually had a tautotita or taftotita, was ever held ineligible to naturalize, or whether his asylum status was ever formally declared unlawful based on his alleged Greek citizenship.[3]  Because Bertos's LPR status derives from her father's asylum, it is important for the court to understand whether her father's asylum status was, in fact, unlawful before ruling on the pending motions.  Although the ultimate burden to prove eligibility for naturalization rests with Bertos, once Bertos has made a prima facie showing of eligibility based on her LPR status, the government has the evidentiary burden to support its position that Bertos's LPR status is unlawful.

Accordingly, the court orders the government to submit additional evidence with respect to Bertos's father's asylum status on or before April 8, 2013.  At that time, the court will rule on the pending motions.

DATED: 3/19/2013

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

---

[3] The only reference in the record before the court that Bertos's father had a tautotita or taftotita is an unsupported statement in an attachment to Bertos's Form N-335, that in an interview held on October 26, 2009 that "it was established that your father was also a citizen of Greece as he was in possession of a tautotita or taftotita . . . ."  No information is provided about who conducted the interview and how it was determined that Bertos's father possessed a tautotita or taftotita.