**United States District Court**
For the Northern District of California

**E-FILED on** 4/9/2013

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re:<br>ATINA BERTOS<br>Plaintiff,<br>v.<br>JANET NAPOLITANO, et al.,<br>Defendants. | No. 5:12-cv-3531-RMW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Re Docket No. 20] |

Plaintiff Atina Bertos ("Bertos") petitioned the court for review of her application for naturalization pursuant to 8 U.S.C. § 1421(c). Bertos obtained lawful permanent resident ("LPR") status in the United States under section 209(b) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1159(b), based on her "derivative asylum status as the . . . child of a person granted asylum." Bertos's Form I-485 Application to Register Permanent Residence or Adjust Status (Pet., Ex. E, Dkt. No. 1-2) ("Form I-485"). The issue is whether Bertos is ineligible to naturalize under the INA when her father's asylum from Iran was later discovered to be unlawful. Defendants, various directors and a supervisor of the United States Citizenship and Immigration Services ("CIS" or "agency") (collectively, the "government") move to dismiss Bertos's petition under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Alternatively, the government moves for

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS —No. 5:12-cv-3531-RMW
TDMH/ALG

1  summary judgment pursuant to Rule 56. Having considered the papers submitted by the parties, the
2  arguments of counsel, and for the reasons set forth below, the court GRANTS defendants' motion to
3  dismiss and DENIES the petition. Because the court grants the motion to dismiss, it does not
4  address the motion for summary judgment.

## I. BACKGROUND

Bertos entered the United States in 1994 as a temporary visitor, but remained in the United States pursuant to the grant of her father's 1995 Application for Asylum and Withholding of Deportation ("Asylum Application"), which included her as a derivative beneficiary of her father. Pet. ¶ 12; Asylum Application (Pet. Ex. H, Dkt. No. 1-2 at 52-54). The CIS, formerly the United States Immigration and Naturalization Service ("INS"), granted Bertos's father asylum on the basis that he had established a "well-founded fear of persecution upon returning to [his] home county of Iran." Pet. ¶ 12. In 1997, Bertos filed an Application for Adjustment of Status to LPR. *Id.* On November 1, 1998, the agency granted her LPR status under section 209(b)(3) of the INA, codified at 8 U.S.C. § 1159(b)(3), based on her "derivative asylum status as the . . . child of a person granted asylum." Form I-485. Section 1159(b)(3) provides that the Secretary or Attorney General "may adjust to [LPR status] any alien granted asylum who . . . continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee." Almost ten years later, in 2007, Bertos applied to naturalize. In 2011, the CIS denied her application.

The CIS based its denial of Bertos's naturalization application on a 2006 naturalization interview of her father, in which it allegedly discovered that he possessed Greek citizenship—a fact which the agency was unaware when it granted his application for asylum from Iran. *Id*. ¶¶ 13-15. Bertos does not contend that her father was *not* a Greek citizen, but rather asserts only that "*she* is not a Greek citizen." *Id. ¶* 13 (emphasis added). As a citizen of both Iran and Greece, to lawfully gain asylum in the United States, Bertos's father was required to prove a well-founded fear of returning to both Iran and Greece.[1] Although Bertos's father's Aslyum Application did allege that he

---

[1] *See* 8 U.S.C. § 1158(a)(2)(A) (An alien otherwise eligible for asylum by being physically present in the United States is not eligible if "the Attorney General determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS —No. 5:12-cv-3531-RMW
TDMH/ALG    2

United States District Court
For the Northern District of California

"c[ould not] return to Greece because [Greece] will not permit [him] to stay legally," Asylum Application, Dkt. No. 1-2 at 56, the agency never made any determination of Asylum with respect to Greece:

> The record shows that your father applied for asylum as an Iranian national and only established a well-founded fear of persecution had he returned to Iran. . . . As a result, the Asylum officer could not adjudicate whether your father held a well-founded fear of persecution had he returned to Greece. As a result, the Asylum officer could not adjudicate whether [he] held a well-founded fear of persecution had he returned to Greece. Consequently, your father did not lawfully obtain permanent residence status in the United States.

Attachment to the CIS's Naturalization Decision, Alien File No. A7341185, Dkt. No. 1-2 at 4. Because Bertos's LPR status derives from her father's asylum, the government found that, like her father, she was "erroneously granted asylum status, and . . . did not lawfully obtain permanent residence status in the United States." *Id*. Bertos filed a timely appeal of the denial, which the government again denied. *Id*. ¶ 16-17.

Having exhausted administrative options, on July 16, 2012, Bertos filed this petition seeking de novo judicial review of her naturalization petition. *Id*. The court granted Bertos's motion to accept late filing of her opposition to the government's motion, and extended the reply deadline and hearing date accordingly. Dkt. Nos. 24, 25. Following the hearing on the motion, the court ordered the government to submit additional evidence with respect to Bertos's father's asylum status, Dkt. No. 30, which the government submitted, Dkt. No. 32, and the court has considered.

## II. ANALYSIS

District courts possess jurisdiction to review a denied naturalization application de novo. 8 U.S.C. § 1421(c) ("A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer . . . may seek review of such denial before the United States district court for the district in which such person resides . . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."). However, courts do not have

---

habitual residence) in which the alien's life or freedom would not be threatened.").

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS —No. 5:12-cv-3531-RMW
TDMH/ALG           3

equitable authority to naturalize citizens otherwise ineligible under the law. *Immigration & Naturalization Serv. v. Pangilinan*, 486 U.S. 875, 885 (1988) ("Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of the[] limitations [imposed by Congress]."). "[T]he burden is on the applicant to show his eligibility for citizenship in every respect" and "doubts should be resolved in favor of the United States and against the claimant." *Berenyi v. Immigration & Naturalization Serv.*, 385 U.S. 630, 636-37 (1967).

### A. Standard of Review

To survive a motion to dismiss, the petition must contain factual allegations that are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Furthermore, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

### B. "lawfully admitted" under 8 U.S.C. § 1429

To establish eligibility to naturalize, an applicant must show that the he or she "has been *lawfully admitted* to the United States for permanent residence in accordance with all applicable provisions of [the INA]." 8 U.S.C. § 1429 (prerequisite to naturalization) (emphasis added); *see also* § 1427(a) (requirements of naturalization) ("No person . . . shall be naturalized unless such applicant . . . has resided continuously, after being *lawfully admitted* for permanent residence, within the United States for at least five years." (emphasis added)). Under the INA, "the term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101.

#### i. The parties' arguments

Bertos contends that her LPR status is valid and irrevocable, and thus she meets all requirements to naturalize under the INA. Bertos relies on the five year statute of limitations on the

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS —No. 5:12-cv-3531-RMW
TDMH/ALG         4

government's ability to rescind LPR status to support the proposition that, because her status is irrevocable, she has necessarily been "lawfully admitted" for the purposes of naturalization. *See* 8 U.S.C. § 1256(a) ("If at any time *within five years* after the status of a person has been otherwise adjusted . . . to that of [LPR], it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person." (emphasis added)); *see also Fulgencio v. Immigration & Naturalization Serv.*, 573 F.2d 596, 598 (9th Cir. 1978) ("After five years, *the alien's status is unassailable.*" (emphasis added)).  Because it has been more than five years since the government adjusted Bertos's status to LPR, she argues that her LPR status is irrevocable, and thus no basis exists to deny her naturalization application.

The government counters that Bertos's LPR status, which is based on her derivative asylum, is unlawful and void in the same way as her father's was.  Regardless of whether the five year statute of limitations has passed, the government contends that Bertos cannot rely on an *unlawful* LPR status for the purposes of naturalization.  The government relies on Ninth Circuit cases holding—in the context of deportation proceedings—that when an applicant was never "lawfully admitted" into the United States, his or her LPR status is void *ab initio*.

### ii. Analysis

In *Monet v. Immigration & Naturalization Serv.*, 791 F.2d 752 (9th Cir. 1986), the Ninth Circuit interpreted the term "lawfully admitted" in the context of a resident alien's petition for waiver of deportation under former section 212(c) of the INS, codified at 8 U.S.C. § 1182(c) (1994) (repealed in 1996).  Former § 1182(c) relief applied only to "[a]liens lawfully admitted for permanent residence."   In that case, resident alien Monet procured an adjusted LPR status in 1972, but in 1979 he was the subject of deportation proceedings based on a drug-related conviction that he had concealed on his LPR application. *Id.* at 753.  Monet argued that he qualified for waiver of deportation under the statute because his LPR status was unassailable under the five year statute of limitations. *Id*. at 754.  The court rejected this argument, limiting the INA's five-year statute of limitations to rescission proceedings only. *Id*. ("'Congress has seen fit to do away with statutes of limitation with regard to deportation proceedings, but in its wisdom has engrafted such a limit to the

rescission of status proceeding alone.'") (quoting *Oloteo v. Immigration & Naturalization Serv.*, 573 F.2d 596, 682-83 (9th Cir. 1978)). In *Monet*, the Ninth Circuit relied on the Fifth Circuit's definition of "lawfully admitted" in *In re Longstaff*, which requires "'compliance with substantive legal requirements, not mere procedural regularity . . .'" *Monet*, 791 F.2d at 753 (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983).

In *In Re Koloamatangi*, 23 I & N Dec. 548, 551 (BIA 2003), the Board of Immigration Appeals ("Board") extended the reasoning from *Monet* and *Longstaff* to a petition for cancellation of removal under 8 U.S.C. § 1229b(a)—which, like former § 1182(c), applies, *inter alia*, to "an alien *lawfully admitted* for permanent residence for not less than 5 years" (emphasis added). In *Koloamatangi*, the resident alien was subject to removal proceedings after the government discovered that his LPR status was based on a knowingly bigamous "marriage" to a United States citizen. *Id.* at 549. The alien petitioned for cancellation of removal under § 1229b(a) on the basis that his LPR status was five or more years old and he met the other statutory requirements. *Id.* The Board disagreed, holding that "the term 'lawfully admitted for permanent residence' did not apply to aliens who had obtained their permanent resident status by fraud, or *had otherwise not been entitled to it*." *Id.* at 550 (emphasis added). Although *Monet* and *Longstaff* interpreted "lawfully admitted" under former § 1182(c), the Board concluded that the judicial interpretation survived the 1996 amendment to the statute. *Id.* Accordingly, the Board held: "[T]he correct interpretation of the term 'lawfully admitted for permanent residence' is that an alien is deemed, *ab initio*, never to have obtained LPR resident status once his original ineligibility therefor [sic] is determined in proceedings." *Id.* at 551. "Considerable deference is due an agency's interpretation and application of a statute it administers," *Monet*, 791 F.2d at 753, and this court agrees that the judicial interpretation of "lawfully admitted" carries the same meaning after the statutory amendment.

Moreover, whether the fraud or error at issue in procuring LPR status is someone else's is immaterial in the context of waiver of inadmissability under section 212(k) of the INS, codified at 8 U.S.C. § 1182(k). *See Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010). In *Shin*, the Shins obtained LPR statuses as the unmarried sons or daughters of an LPR under 8 U.S.C. § 1153(a)(2)(B), and "the validity of their visas turn[ed] on whether [their mother's] admission for

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS —No. 5:12-cv-3531-RMW
TDMH/ALG                                                    6

permanent residence was 'lawful' in nature." *Id.* at 1216. Unknown to the Shins or their mother, their mother's LPR status resulted from a criminal conspiracy involving a former INS officer. *Id.* at 1214-16. Relying on *Monet* and *Koloamatangi*, the court of appeals held: "Although the facts of both *Monet* and *Koloamatangi* involve acts of personal fraud or misrepresentation, their holdings broadly deem all grants of LPR status that were not in substantive compliance with the immigration laws to be void *ab initio*." *Id.* at 1217. The court thus concluded that because their mother "was never 'lawfully admitted' for permanent residence[,] . . . the Shins' derivative visas were improperly granted."[2] Similarly, in *Segura v. Holder*, 605 F.3d 1063, 1066 (9th Cir. 2010), the plaintiff attempted to distinguish *Monet* on the basis that *Monet* involved an act of fraudulent concealment, but the court of appeals rejected any knowledge or culpability element to determining whether a resident alien was lawfully admitted for permanent residence. *Id.* at 1066 ("Although the facts of *Monet* indicate that the alien there did conceal his prior conviction . . . nothing in our discussion of the alien's eligibility for relief turned on the act of concealment. Rather, we emphasized the necessity of actually complying with the substantive elements of the admission requirements."). Accordingly, the fact that the relevant omission here was Bertos's father's omission, and not her own, is irrelevant to whether Bertos was "lawfully admitted for permanent residence." *See Shin*, 607 F.3d at 1217.

The only issue is, therefore, whether the Ninth Circuit and the Board's interpretation of "lawfully admitted for permanent residence" in the context of waiver or cancellation of deportation proceedings applies equally to naturalization under §§ 1427(a) and 1429. Bertos points to no reason why the same language in the INA should be interpreted differently in the context of establishing eligibility for naturalization. Establishing eligibility for naturalization is procedurally similar to establishing a defense to deportation in that both place the burden of proof on the applicant. As the Ninth Circuit pointed out in *Fulgencio* and *Monet*, there is a distinction between proceedings where the government bears the burden of proof—e.g., rescission proceedings where the five year statute

---

[2] The court held, however, that the Shin's qualified for waiver of inadmissibility under 8 U.S.C. § 1182(k) because, although their visas were void *ab initio* based on their unlawful permanent resident status, the invalid visas could still serve as a basis to meet the statutory requirement that the alien be "in possession of an immigrant visa." *Id.* at 1219-21.

of limitation applies—and where the applicant bears the burden of proof—e.g., contestation of deportation proceedings where the five year statute of limitations *does not* apply. *Fulgencio*, 573 F.2d at 598 ("[W]hen the INS seeks to rescind a grant of permanent resident status, it has the burden of proof and must establish its ground for rescission by clear, unequivocal and convincing evidence."); *Monet*, 791 F.2d at 754 ("[In *Oloteo* w]e also relied on the distinction between rescission and deportation proceedings. 'While deportation . . . may follow the rescission of adjusted status, it is not the same remedy nor is it governed by the same procedures.' . . . That 'Congress has chosen to limit rescission proceedings and not deportation proceedings is its prerogative.'" (quoting *Oloteo*, 643 F.2d at 681-83)). Here, similar to a defense to deportation, the naturalization applicant "seeks to obtain the privileges and benefits of citizenship . . . affirmatively asking the Government to endow him with all the advantages of citizenship," and thus "the burden is on the alien applicant to show his eligibility for citizenship in every respect." *Berenyi*, 385 U.S. at 636-37. Accordingly, like in a waiver or cancellation of deportation proceeding, Bertos must establish substantive compliance with the INA's requirements for LPR status "in every respect" to naturalize, and the five year statute of limitations on rescission of LPR status does not help her. *Accord Zuniga v. Holder*, 2012 WL 4215859, at *4 (N.D. Cal. Sept. 14, 2012) (reaching the same conclusion in the context of naturalization on the basis that "Zuniga does not explain why the Court should interpret [lawfully admitted] differently for the purposes of two different sections of the same statute.").

Here, Bertos's initial grant of asylum and subsequent adjustment to LPR status were predicated entirely on her father's application for asylum in the United States, which the agency found to be defective. Bertos does not allege that her father was *not* a citizen of Greece.[3] Nor does she allege that her father's asylum was lawful. Rather, Bertos alleges that she herself is not a citizen of Greece. Pet. ¶ 13. While this might be sufficient for Bertos to gain independent asylum, her current LPR status is based on her father's asylum, and would not exist but for her father's asylum. Regardless of her citizenship, her current LPR status is based on a defective grant of asylum. While Bertos's LPR status remains unassailable in a rescission proceeding based on the statute of

---

[3] The government's April 8, 2013 submissions regarding Bertos's father's asylum status confirm that Bertos's father *was* a citizen of Greece at the time he applied for asylum in the United States.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS —No. 5:12-cv-3531-RMW
TDMH/ALG         8

limitations, *Fulgencio*, 573 F.2d at 598, the five year statute of limitations cannot cure Bertos's unlawful LPR status for the purposes of *naturalization*. The CIS thus properly denied her petition for naturalization. However, the government avers to the court that "Bertos might be able to perfect her immigration status by filing her own independent asylum application. Should she be able to demonstrate eligibility, she could then wait the required time and reapply for naturalization." Reply 5. The court assumes that the CIS would honor this statement if Bertos does choose to apply for independent asylum, as this is both an exceptional circumstance and a changed circumstance warranting an application for asylum outside of the normal one-year time frame for application. *See* 8 C.F.R. § 208.4.

### iii. *Agarwal v. Napolitano*

Plaintiffs cite *Agarwal v. Napolitano*, 663 F. Supp. 2d. 528 (W.D. Tex. 2009), to support the conclusion that, because Bertos's LPR status is unassailable, it must also be valid for the purposes of naturalization. In *Agarwal*, the applicants filed suit for district court review of their naturalization applications under 8 U.S.C. § 1447(b) (based on the CIS's failure to issue a naturalization decision within 120 days of the aliens' in person interview). *Id.* at 530, 532. The government argued that the Agarwals' LPR status was void *ab initio* because they failed to pay an enhanced fee required under the INA. *Id*. at 537. However, the CIS failed to notify the Agarwals' of the enhanced fee as required by the statute. *Id.* at 538-39. The court concluded that "[t]he CIS's failure to submit evidence that they provided the required notice prevents the agency from prevailing on its motion for summary judgment." *Id.* at 539. The court further explained: "The law plainly states that, once granted, LPR status sticks; if the CIS later realizes that the alien was actually ineligible for that adjustment in status at the time of granting (i.e. it was granted erroneously) then it *must follow the formal procedure for revocation or rescission*." *Id*. (emphasis added). Finally, the court rejected the idea that the CIS could revoke an LPR status through a naturalization decision. *Id.* at 540 ("[A]ttempting to revoke LPR status through . . . naturalization decisions, twelve years after the initial erroneous grant, would be impermissible under the relevant laws and regulations. The procedure for revoking an alien's [LPR] status is laid out at 8 C.F.R. § 246.1."); *id.* at 541 ("[T]his Court holds that the CIS

has not proved that the Agarwals' LPR status was properly revoked, and since it has not been revoked, the Agarwals are not rendered ineligible for naturalization on such grounds.").

*Agarwal* is distinguishable from the present case. First, the Agarwals' allegedly defective LPR statuses were based in large part on the *government's* unlawful actions—the failure to notify the Agarwals of the enhanced fee requirement in compliance with the INA. *Id.* at 538-39. The *Agarwal* court found that the agency error prejudiced the Agarwals because, had they been notified in accordance with the law, there was no indication that the Agarwals could not have remedied their LPR status by paying the fee. *See id.* In contrast, here, the CIS did not engage in any unlawful activity that caused Bertos's defective LPR status. Moreover, no action by Bertos herself could have remedied the defect in the original asylum application. Second, the government in *Agarwal* was actually attempting to revoke the Agarwals' LPR status as part of a denial of naturalization, *id.* at 541, whereas here the government is not attempting to revoke Bertos's LPR status. Rather, the government here argues under Ninth Circuit precedent that Bertos's *unlawful* LPR status cannot serve as a basis for naturalization. The government has not tried to and indeed cannot *rescind* Bertos's LPR status because a rescission proceeding is time barred. For these reasons, *Agarwal* is not applicable to the facts of this case.

### III. ORDER

For the foregoing reasons, the court grants defendants' motion to dismiss Bertos's petition. This court rules only on the current petition for naturalization, and assumes, as the government represents, that "Bertos might be able to perfect her immigration status by filing her own independent asylum application. Should she be able to demonstrate eligibility, she could then wait the required time and reapply for naturalization." Reply 5.

DATED:     April 9, 2013

RONALD M. WHYTE
United States District Judge